IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JOSEPH ELIAS,
and all others similarly situated,

                Plaintiffs,
  v.

CITY OF AURORA,

                Defendant.

## COMPLAINT

Plaintiff Joseph Elias ("Elias"), and all others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Matt Pierce, Alex Behn, and Margaret Angelucci, of Asher, Gittler & D'Alba, Ltd., hereby complain of Defendant, the City of Aurora ("Defendant" or "the City"), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). In support of their Complaint, Plaintiffs state and allege as follows:

## NATURE OF THIS ACTION

1. This is an action to recover unpaid overtime compensation and other relief under the FLSA, 29 U.S.C. §§ 207, 216.

2. Since at least January 2022, and continuing through the present, Elias and all other similarly situated current and former employees of the City have not been paid any overtime compensation for hours worked over forty in a seven-day workweek while training at the Aurora Fire Academy. Plaintiffs seek relief in the form of compensation at one and one-half times their regular rate(s) of pay for all hours worked at the Fire Academy in excess of forty in each seven-day workweek that fall within the applicable statute of limitations period, liquidated damages

1

under the FLSA, interest, injunctive and declaratory relief, and all reasonable attorney's fees and costs incurred in bringing this action.

## JURISDICTION AND VENUE

3. Jurisdiction for this action is conferred upon this Court by 28 U.S.C. § 1331, arising under 29 U.S.C. § 216(b).

4. Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c) because the unlawful employment practices occurred in this judicial district, and Defendant has its principal place of business in this judicial district.

## PARTIES

5. At all relevant times, Plaintiffs are or were "employees," as that term is defined within the meaning of Section 203(e) of the FLSA, 29 U.S.C. § 203(e), of Defendant City of Aurora.

6. Plaintiff Elias brings this action on his own behalf and on behalf of all other current and former employees of the City similarly situated to him pursuant to 29 U.S.C. § 216(b). A copy of the named Plaintiff's consent form is attached hereto and contemporaneously filed herewith.

7. Defendant City of Aurora is a city and public employer located in Colorado, in this judicial district. Defendant City of Aurora is a "public agency" as that term is defined in Section 203(x) of the FLSA, 29 U.S.C. § 203(x).

8. At all relevant times, Defendant City of Aurora was considered an "enterprise engaged in commerce or in the production of goods for commerce" for purposes of Section 203(s) of the FLSA, 29 U.S.C. § 203(s)(1)(C).

9. At all relevant times, Defendant City of Aurora was an "employer" of Plaintiffs as that term is defined in Section 203(d) of the FLSA, 29 U.S.C. § 203(d), and, as such, was and is subject to the provisions of Section 7 of the FLSA, 29 U.S.C. § 207.

## FACTS

10. In order to become certified firefighters, newly hired members of Aurora Fire Rescue must attend and graduate from a training program at the City's Fire Academy.

11. The Fire Academy is a full-time training program that takes approximately 25 weeks to complete. Prior to February 2024, the Fire Academy took approximately 20 weeks to complete.

12. Training at the Fire Academy is conducted primarily at the City of Aurora Public Safety Training Center, and it includes classroom education and testing, intensive skills training, physical training and exercise, and various other tasks intended to train and prepare newly hired firefighter recruits to become certified members of Aurora Fire Rescue capable of responding to emergency calls and engaging in fire suppression.

13. Each Plaintiff commenced their employment with Aurora Fire Rescue as a firefighter recruit and attended the Fire Academy.

14. While attending the Fire Academy, each Plaintiff was classified as a Firefighter IV (8-hour).

15. Each Plaintiff's official date of employment with the City and date of original appointment to Aurora Fire Rescue coincided with their first date of attending the Fire Academy.

16. While Plaintiffs were attending the Fire Academy, Defendant paid Plaintiffs an established salary for their straight-time hours of work.

17. Since at least January 2022, and continuing through the present, Defendant has maintained a policy of not compensating employees attending the Fire Academy any overtime compensation for hours of work performed over 40 in a workweek. Each of those employees was paid only their established salary for straight-time hours of work while attending the Academy, with no consideration for the hours of overtime work performed each week.

18. Prior to completing their training at the Fire Academy and graduating from that training program, Plaintiffs were not "employee[s] in fire protection activities" as defined under Section 3(y) the FLSA, 29 U.S.C. § 203(y).

19. Plaintiffs were not trained in fire suppression prior to attending and graduating from the Fire Academy.

20. Plaintiffs' job responsibilities at the Fire Academy did not include fire suppression.

21. While they were attending training at the Fire Academy, Plaintiffs had no legal authority or responsibility to engage in fire suppression.

22. While they were attending training at the Fire Academy, Plaintiffs were not engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment was at risk.

23. Plaintiff Joseph Elias was employed as a firefighter recruit and attended the Fire Academy during the period of July 17, 2023, through August 30, 2023.

24. Plaintiff Elias suffered an injury on August 15, 2023, which required him to cease physical training, but he continued performing other work assignments at the Fire Academy through August 30, 2023.

25. Plaintiffs were paid their regular salary representing 40 hours of work per week for their work performed at the Fire Academy.

4

26. Plaintiffs were never paid any compensation in addition to their regular salary for weeks in which they performed more than 40 hours of work.

27. Plaintiffs worked five days per week at the Fire Academy, and Defendant required Plaintiffs to report to work at 5:30 a.m. each workday.

28. Plaintiffs started each workday at 5:30 a.m. by performing various mandatory chores, including but not limited to inspecting personal protective equipment, inventorying equipment and apparatus, and having their vital signs checked, followed by a mandatory workout from 6:00 a.m. to 7:00 a.m.

29. Following their daily mandatory workout, Plaintiffs were given approximately 10 minutes each morning to use the bathroom and change clothes.

30. Plaintiffs' training at the Fire Academy generally ended between 5:30 and 6:30 p.m. each workday.

31. After training each workday at the Fire Academy, Plaintiffs were required to perform additional mandatory chores.

32. If Plaintiffs failed to complete all of their mandatory pre- and post-training chores, Plaintiffs were subjected to disciplinary action by the City and/or forced to complete physically taxing exercises as a form of discipline.

33. Due to the schedule described above, Plaintiffs worked over 40 hours per week at the Fire Academy.

34. Plaintiffs were required to pass various written examinations while attending the Fire Academy. In order to prepare for these examinations, Plaintiffs were required to study the material while away from the Academy.

35. Plaintiffs were also required to study independently, outside of regular working hours, to prepare for various PowerPoint presentations administered by Defendant at the Fire Academy. During each of these PowerPoint presentations, Defendant orally quizzed Plaintiffs on the day's topics to ensure that Plaintiffs had studied the information prior to the presentation.

36. If Plaintiffs were not prepared for each of Defendant's PowerPoint presentations, including studying the relevant material independently prior to each such presentation, Plaintiffs were subject to discipline, chastised by Defendant, and/or forced to perform physically taxing exercises as a form of discipline.

37. Defendant did not track, or compensate Plaintiffs for, any time spent studying independently, and Defendant did not place a limit on the amount of time Plaintiffs were permitted to spend studying independently. All time spent studying was in addition to the hours worked on-site by Plaintiffs each workday.

38. In addition to any time spent by Plaintiffs studying for the various mandatory written examinations and oral quizzes at the Fire Academy, Defendant required Plaintiffs to watch a series of mandatory training videos outside of regular working hours. The duration of these videos, as well as the date and time that Plaintiffs completed each video, were tracked via Defendant's learning management software. However, Defendant did not compensate Plaintiffs for any time spent watching these mandatory training videos.

39. Plaintiffs were also required to complete various written assignments outside of regular working hours at the Fire Academy, including but not limited to weekly written Captain's Evaluations and the drafting of a line of duty death letter. Defendant did not track, or compensate Plaintiffs for, any time spent working on these mandatory written assignments, and Defendant did not place a limit on the amount of time Plaintiffs were permitted to spend on these assignments.

40. Each Plaintiff was required to spend approximately 12 to 16 hours per week to complete their mandatory studying and written assignments and to watch all required training videos.

41. While Plaintiffs were attending the Fire Academy, Defendant did not compensate Plaintiffs for the time Plaintiffs spent eating breakfast or lunch on-site each workday.

42. While Plaintiffs were attending the Fire Academy, during breakfast and lunch each workday, Defendant prohibited Plaintiffs from using electronic devices, such as cellphones, and often required Plaintiffs to complete various mandatory chores, receive supplemental instruction, perform drills, and take written tests.

43. While attending the Fire Academy, some or all Plaintiffs were ordered to perform mandatory work referred to by the City as "volunteering," such as staffing the annual IAFF Fire Fighter Memorial. Defendant did not compensate Plaintiffs for their time spent performing this so-called "volunteer" work.

44. During Plaintiff Elias's induction week at the Fire Academy, from July 17, 2023, through July 21, 2023, Defendant made repeated statements which explicitly discouraged Plaintiff Elias and his classmates from contacting Human Resources or otherwise lodging complaints against their supervisors. These included claims that whistleblowing violates Aurora Fire Rescue's chain of command, that if Human Resources did not side with an employee who had lodged a complaint, that employee would be "done," and that Defendant would obstruct any such employee's employment prospects throughout the Denver Metropolitan Area.

45. The City has previously acknowledged that recruits attending the Academy would be entitled to overtime if they worked a full schedule each weekday at the Academy. For example, during Plaintiff Elias' Fire Academy orientation on July 14, 2023, and throughout his induction

7

week at the Fire Academy from July 17 through July 21, 2023, Defendant repeatedly claimed that recruits would be given Wednesdays off at the Academy to prevent them from working overtime. In practice, the City required Plaintiff Elias and his classmates to work regular schedules each weekday at the Academy, despite acknowledging that this would result in the recruits earning overtime pay.

46. On information and belief, the City has intentionally altered or falsified its timekeeping records for firefighter recruits attending training at the Fire Academy by entering incorrect start times for each day of work and not accurately tracking the actual hours worked by each employee. The City took these actions in order to evade its obligations under the FLSA.

## COUNT I

*(Failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a))*

47. Plaintiffs re-allege and incorporate all previous paragraphs of this Complaint as though set forth fully herein.

48. Count I is brought against Defendant by Plaintiff Elias on behalf of himself and on behalf of all other similarly situated current or former employees of Defendant.

49. During their time enrolled in training at the Fire Academy, Plaintiffs were not "employee[s] in fire protection activities" as defined under the FLSA, 29 U.S.C. § 203(y). As such, Plaintiffs were not eligible to be placed on a work period of, or equivalent to, 53 hours per week under Section 7(k) of the FLSA, 29 U.S.C. § 207(k), or on any other work week greater than seven days authorized under Section 7(k). Plaintiffs were therefore working a 7-day, 40-hour workweek during their training at the Fire Academy, and Defendant was required to pay them at least one and one-half times their regular rate of pay for all hours worked in excess of 40 per workweek.

8

50. During their training at the Fire Academy, Plaintiffs worked in excess of 40 hours during various workweeks, but Defendant did not pay them any compensation for those hours worked in excess of 40.

51. By failing and refusing to pay Plaintiffs one and one-half times their regular rates of pay for all hours worked in excess of 40 hours during multiple workweeks occurring within the three years preceding the date on which this Complaint was filed, as alleged in detail above, Defendant has violated Sections 207 and 215(a)(2) of the FLSA, 29 U.S.C. §§ 207, 215(a)(2).

52. Defendant's violations of the FLSA were willful in that Defendant's failure to pay the proper overtime compensation was done knowingly and intentionally in violation of the FLSA or with reckless disregard for Defendant's obligations under the FLSA. Defendant made repeated statements to Plaintiff Elias and his Fire Academy classmates that whistleblowing or complaining about perceived violations of Plaintiffs' legal rights by the City would be treated as a violation of the chain of command, and that complaints to Human Resources were strongly discouraged and could harm an employee's career. Additionally, Defendant was aware that Plaintiffs would accrue overtime if they were required to work 5 days per week, as reflected in statements to that effect made by Defendant to firefighter recruits at the Fire Academy. Thus, the City's policy against paying overtime compensation to firefighter recruits at the Fire Academy constitutes a willful violation of the FLSA.

**WHEREFORE,** Plaintiff Joseph Elias, and all others similarly situated, pray that judgment be entered against Defendant as follows:

    A. A declaratory judgment finding that Defendant willfully violated Sections 207 and 215(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2).

B. A money judgment against Defendant for all sums which may be found to be due to Plaintiffs, as compensatory damages, interest, liquidated damages, attorneys' fees and costs.

C. Injunctive relief requiring Defendant to rescind its unlawful overtime policy and requiring Defendant to adopt a policy that properly compensates firefighter recruits attending the Fire Academy for all overtime hours worked.

D. All other and additional relief deemed just and proper by the Court.

## JURY TRIAL DEMANDED

Plaintiffs request a jury trial on all questions of fact raised by the Complaint.

Respectfully submitted,

*/s/Matt Pierce*

*/s/Alex Behn*

*/s/Margaret Angelucci*

Matt Pierce
Alex Behn
Margaret Angelucci
Asher, Gittler & D'Alba, Ltd.
200 W. Jackson Blvd., Suite 720
Chicago, Illinois 60606
(312) 263-1500 (phone)
(312) 263-1520 (fax)
mjp@ulaw.com
ajb@ulaw.com
maa@ulaw.com

*Attorneys for Plaintiffs*

10

## PLAINTIFF'S CONSENT FORM

I, __Joseph Elias__, hereby consent to sue my former employer, the City of Aurora, as well as any necessary agent or representative of that entity, pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), for the purpose of asserting any and all claims for overtime compensation and unpaid wages, and any related claims for benefits, interest payments/penalties, and damages – including, but not limited to, any liquidated damages – under the FLSA and any similar federal or state law. I agree to allow this consent to apply to all of the overtime and wage claims referred to in this consent form, whether such claims are asserted in an initial or any amended complaint. I authorize the law firm of Asher, Gittler & D'Alba, Ltd. to represent me in said lawsuit. I understand the nature of the suit and execute this consent voluntarily and freely.

_____
(Plaintiff's Signature)

Date: __9/19/24__